**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

SIDNEY P. COE,                                  )
                                                )
              Plaintiff,                        )
                                                )
       vs.                                      )          No. 1:20-CV-69 DDN
                                                )
HOLLIE DYSINGER, et al.,                        )
                                                )
              Defendants.                       )


<u>**MEMORANDUM AND ORDER**</u>

This matter is before the Court upon the motion of self-represented plaintiff Sidney P. Coe for leave to commence this action without prepayment of the required filing fee.  Having reviewed the motion and the financial information submitted in support, the Court will grant the motion and assess an initial partial filing fee of $1.50.  *See* 28 U.S.C. § 1915(b)(1).  Furthermore, after reviewing the complaint and supplemental filings, the Court will dismiss this case without prejudice for failure to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915(e)(2).

**Initial Partial Filing Fee**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee.  If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period.  After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account.  28 U.S.C. § 1915(b)(2).  The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff submitted an application to proceed in district court without prepaying fees or costs (ECF No. 3) and a certified prison account statement (ECF No. 5). Although the application is signed by plaintiff, he left all the financial information blank. *See* ECF No. 3. However, based on the financial information in the account statement, plaintiff's average monthly deposit is $7.50 in state payroll tip. *See* ECF No. 5 at 3-4. The Court finds that plaintiff has insufficient funds in his prison account to pay the entire fee and will therefore assess an initial partial filing fee of $1.50, which is twenty percent of plaintiff's average monthly deposit.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, is malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-plead facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984),

and liberally construes the complaint.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework.  *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015).  However, even self-represented complainants are required to allege facts which, if true, state a claim for relief as a matter of law.  *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff that assumed facts that had not been pleaded).

## The Complaint and Supplements

Plaintiff, an inmate at Southeast Correctional Center ("SECC"), brings this action under 42 U.S.C. § 1983.  He alleges violations of his civil rights against twenty-one named defendants associated with SECC and employed by the Missouri Department of Corrections ("MDOC"): (1) Hollie Dysinger (lieutenant); (2) Charles Reeds (caseworker); (3) Wesley Fluharty (caseworker); (4) Matthew Short (caseworker); (5) Bruce Hanebrink (functional unit manager); (6) Richard Adams (assistant warden); (7) Jason Lewis (warden); (8) Jeff Norman (deputy division director); (9) Benjamin Crass (lieutenant); (10) Unknown Tayler (sergeant); (11) Unknown Carter (caseworker); (12) Unknown Nenseworthy (sergeant); (13) Darrell Wilson (sergeant); (14) Unknown Womack (correctional officer ("CO")); (15) Unknown Lutes (CO); (16) Unknown Hoskins (sergeant); (17) Unknown Henson (CO); (18) Unknown Smith (CO); (19) Unknown Covington (CO); (20) Unknown Hyten (CO); and (21) Unknown Hancock (major).  ECF No. 2 at 2-4.  Plaintiff's claims as to defendants Dysinger and Wilson are brought against them in both

their official and individual capacities; but he does not state in what capacity he sues the other nineteen defendants.  *Id.*

On April 6, 2020, plaintiff filed his nineteen-paged complaint, listing six "Claims.".  ECF No. 2 at 5-10.  Attached to the complaint, plaintiff included an "Affidavit" which details many of the events in his life between June 2019 and March 2020 and provides the factual basis for his legal claims.  ECF No. 2-1.  He also attached documents concerning two grievances that he filed at SECC in July 2019.  ECF No. 2-2.  In his complaint, plaintiff states his injuries as: "psychological injury, mental & emotional injury, deep tissue tear on left hand, open scrapes/scratches on right leg, bruised knee, swollen ankle, L5-S1: spinal disc narrowing: inflicted pain: too much pressure/little support."  ECF No. 2 at 13.

On April 30, 2020, plaintiff filed an additional sixty-four pages of exhibits to supplement his complaint.  ECF No. 8.  In his complaint, plaintiff requested damages but did not state an amount.  ECF No. 2 at 14.  In his supplemental filing, plaintiff specified that he is seeking relief in the amount of $1 million dollars.  ECF No. 8 at 1.  This amount includes "psychological damages, physical damages, & mental & emotional damages."  *Id.*  Plaintiff also wants the Court to "change the conditions of confinement in Ad-Seg" and "to give [plaintiff] the opportunity to put things such as deprivations in prison to an end" because "this is an ongoing thing at this facility and in prison all over America."  *Id.*

Many of the documents filed by plaintiff are handwritten and difficult to decipher. However, after review of all filings in an attempt to connect the underlying factual basis to each of plaintiff's alleged legal claims, the Court would summarize plaintiff's claims as follows.

**A.  "Claim I"**

Plaintiff's first claim is against defendants Dysinger, Reeds, Fluharty, Short, Hanebrink, Adams, Lewis, and Norman.  Plaintiff alleges these defendants violated his rights to due process and equal protection and forced him to suffer cruel and unusual punishment in violation of the Eighth Amendment.  This claim is based on three separate factual scenarios.  First, plaintiff alleges that he was denied access to the law library for over seven months despite having a pending legal court case.  ECF No. 2 at 5.  One must have a qualified legal claim ("QLC") in order to be granted access to the law library at SECC.  He alleges he was denied QLC status despite having an ongoing state court case concerning child custody of which he provided proof via legal mail.  *See* ECF No. 8-2 at 8 (denying QLC status).  In his affidavit, plaintiff alleges that he received legal mail from a CO on June 10, 2019.  ECF No. 2-1 at 1.  The mail had been delayed in reaching him since it had been originally sent to his prior place of incarceration.  Despite being late in receipt, plaintiff was able to mail the necessary return letter within the thirty-day deadline imposed by the court.  Plaintiff complains that mail is only sent out on Tuesdays and Thursdays, that legal mail should come from a caseworker not a CO per prison policy, and that he received the letter late.  *Id.* at 1-2.  Plaintiff attached as supplemental exhibits many of the filings from this state court child custody case.  *See* ECF No. 8-1.  According to the exhibits filed, plaintiff successfully modified his child support payments from $50 to $1 a month.  *Id.* at 19.  In addition, plaintiff attached his grievance filings concerning his allegation that prison policy was violated when a CO handed out legal mail instead of a caseworker.  *See* ECF No. 2-2 at 1-6.  His grievance was denied for lack of evidence.

Second, plaintiff alleges that he was denied procedural due process concerning a declaration of protective custody that he made in order to request a change of cellmate to a non-

enemy.  ECF No. 2 at 5.  He alleges that he was not able to file a grievance related to this complaint until two months later and that he suffered atypical and significant hardships as retaliation for his belief that he suffered a due process violation.  *Id.*

Third, plaintiff asserts that he was discriminated against by defendants based on his race (black), religion (Rastafarian), sex (male), income level (indigent), political beliefs (Democrat), and because he is "young with dreadlocks."  ECF No. 2 at 6.  This discrimination occurred when he was put in a cell without 2 bunks, even though he was not on suicide watch nor on single-man cell status.  In his affidavit, plaintiff describes how an enemy inmate was assigned to his cell on June 12, 2019.  ECF No. 2-1 at 2.  As a result, plaintiff declared protective custody, he was removed from his cell, and he was put in a cell alone.  He began to feel depressed about some financial problems he was having so he declared himself suicidal that evening.  According to plaintiff, after his declaration, no one checked on him and there was no camera watching him. He subsequently saw a mental health professional and was removed from suicide watch a few days later.  However, he was then required to move cells multiple times due to enemy inmates and was eventually placed in a suicide watch cell for four days (June 15-19).  Plaintiff alleges that during these four days, he became very "stressed" about being in a suicide cell despite not being on suicide watch nor having single-man cell status.  *Id.* at 3.  He even states that he went on a "med strike" to try to get out of his cell and into a 2-bunk cell.  *Id.* at 4.

Plaintiff also alleges that the cell he was put in had the previous occupant's feces on the walls and floor, exposing him to an unreasonable risk of serious harm.  ECF No. 2 at 6.  Plaintiff states that he was told he could clean the cell himself, but he did not want to because it was not his mess.  He cleared a spot on the floor for his mat and stayed in the cell until it was cleaned by staff.  ECF No. 2-1 at 3.  Plaintiff attached to his complaint his grievance filings concerning

being placed in a suicide cell when not on suicide watch.  *See* ECF No. 2-2 at 7-12.  His grievance was denied, explaining that he was only "temporarily placed in a cell that had been previously used as a suicide watch cell because no other cell was available at that time."  *Id.* at 7.

Plaintiff alleges he suffered back injuries, presumably as a result of sleeping on the floor. ECF No. 2-1 at 3.  On January 23, 2020, he saw a radiologist for a spinal x-ray due to back pain since June 2019.  *Id.* at 10.  According to plaintiff, he was told a few days later that the x-ray showed "spinal disc narrowing" which is states he was told is normal for people to experience as they age.  *Id.*  Plaintiff states that he went to sick call on March 18, complaining about back pain. He was prescribed Ibuprofen for 180 days.  *Id.* at 12.

According to a "Memorandum" included in the supplemental filings, on the same date that plaintiff declared protective custody, he was placed on Special Security Orders due to behavioral issues.  ECF No. 8-2 at 22-23.  Plaintiff was put on alternate meals, or "meal loaf," from the June 12 noon meal until after breakfast on June 15 for the stated reason of: "spit or throw urine, feces or semen, improperly dispose of urine, feces or semen including masturbating openly and in an extremely and deliberately conspicuous manner."  *Id.* at 24.  Plaintiff was also put on slider status and labelled a sexually aggressive inmate.  *Id.* at 23.  These orders resulted from six (6) conduct violations received by plaintiff between January 27 and April 13, 2019.  *Id.*

### B.  "Claim II"

Plaintiff brings his second claim against defendants Crass, Tayler, Carter, Dysinger, and Nenseworthy for violations of his rights to free speech and due process, and for violations of the Eighth Amendment prohibition on cruel and unusual punishment.  ECF No. 2 at 6-7.  Plaintiff states that he became "argumentative" when he was told in December 2019 that he was being put in solitary confinement.  *Id.* 7.  He admits to having received conduct violations, but he alleges

that his punishment was unjustifiably harsh for the violations received and that his harsh punishment was due to discrimination.  While in solitary, plaintiff asserts that his First and Eighth Amendment rights were violated when he couldn't use the phone to call family, he was not given shower shoes, and maintenance workers done on his cell door created a dust that made it hard for him to breathe.  *Id.* at 7-8.

In his affidavit, plaintiff states that he was in solitary confinement from December 5, 2019, until February 10, 2020.  ECF No. 2-1 at 5-9.  He admits to having received a conduct violation on December 19, but he alleges that the punishments received – alternative meals and slider status – did not fit the violation.  *Id.* at 5.  In fact, according to documents filed by plaintiff, he received conduct violations on December 1, 19, and 25 – two for "Deliberate Exposure of Ones Genitals" and one for "Fail[ure] to Comply with an Order."  *See* ECF No. 8-2 at 20, 21, 29.  Plaintiff alleges he was refused recreation time while in solitary.  ECF No. 2-1 at 6.  Plaintiff alleges that on December 20, 2019, he went on a hunger strike which caused him to pass out that afternoon in his cell.  Plaintiff states that he received no medical attention.

As discussed below in Claim 3, plaintiff was physically restrained by the Ad-Seg moving team on December 25, 2019.  At that time, he was placed on "limited property."  Plaintiff did not receive his property back until December 27, 2019, at which time he received a blanket, pants, and hygiene items.  Plaintiff had to miss his shower time because of a delay in getting his shower shoes.  *Id.* at 7.  Due to the property restriction, plaintiff had to see his medical provider on December 26, in just a smock with no shoes.  He asserts that this amounted to "harsh conditions" because the smock did not have a Velcro attachment, and the floor was dirty and cold.  *Id.* at 7.

On February 9, 2020, plaintiff alleges that prison maintenance workers sawed on his food port while he was in his cell.  *Id.* at 9.  According to plaintiff, he told them that he was having a

- 8 -

hard time breathing due to the "sawing smell."  He was not removed from the cell and had to stand on the toilet and breathe out the vent.  *Id.*

### C.  "Claim III"

Plaintiff's third claim is brought against defendants Wilson, Womack, and Lutes for excessive force and failure to protect.  ECF No. 2 at 8.  Plaintiff alleges that he was taken down by the SECC moving team when he was not posing a threat but just laying "flat on the ground," resulting in injuries to his left hand and right foot.  He alleges Wilson failed to protect him from this malicious and sadistic use of force that was not necessary to restore order.  *Id.* at 9.

According to plaintiff's affidavit, on December 25, 2019, he "refused" the "noon meal" and because the CO did not call it in immediately – like plaintiff alleges that he was supposed to do – plaintiff "held the food port" and demanded to speak to the second lieutenant.  ECF No. 2-1 at 6.  By the time the "Ad-Seg Five Man Team" arrived, plaintiff had "let go of the food port" but the "moving team" came into his cell anyway.  *Id.*  Despite the team seeing "immediately that [plaintiff] was no threat," plaintiff was "token [sic] down immediately to be placed in restraints."  Plaintiff states that he did not refuse or struggle but that they "used extra methods of force to their advantage by holding their body weight down" on him.  *Id.*

Plaintiff included a Conduct Violation Report concerning this incident, dated December 25, 2019, in his supplemental filings.  ECF No. 8-2 at 29.  According to defendant CO Womack, he witnessed plaintiff's "window [was] covered with his property."  As a result, defendant Wilson gave plaintiff a "verbal directive to submit to mechanical wrist restraints," to which plaintiff refused.  Wilson called for the cell door to be opened and plaintiff "used his mattress as a shield to resist the five man movement team."  *Id.*  According to the report, plaintiff's own

actions placed him in violation of "disobeying an order" and "creating a disturbance."  The report ends by stating that the event "resulted in a use of force."  *Id.*

Plaintiff alleged that he suffered injuries to his left knee, right foot (which he already had a bullet in), and left hand when he was taken down by the moving team.  Plaintiff asserts that the incident of "excessive force" lasted 12 to 25 seconds.  ECF No. 2-1 at 6.  Plaintiff was removed from his cell and placed on "limited property."  *Id.*  He states that he was denied medical treatment but admits that he spoke with a nurse and showed him his injuries.  The nurse told him to submit a health service request.  *Id.* at 7.  On the following day, December 26, 2019, plaintiff states that he saw a provider about his meds and a few days later, on January 1, 2020, plaintiff saw a nurse concerning his injuries.  He was diagnosed with a probable pulled muscle and prescribed Tylenol.  *Id.* at 7-8.  Plaintiff asserts that he was supposed to see the nurse again during sick call on January 10, but he was never pulled out for it.  *Id.* at 8.

On January 23, when plaintiff saw a radiologist for a spinal x-ray, he states that the radiologist also x-rayed his hand.  *Id.* at 10.  No fracture was found, and plaintiff was told he had a deep tissue tear due to a "knot in [his] hand that's swollen from the inside out" but the exterior swelling had gone done.  Plaintiff states that he did not ask about his knee or foot injuries because the radiologist was so busy.  However, on February 28, a doctor examined his knee and found "nothing major" and told him it was a "bruise."  *Id.* at 11.  Plaintiff saw a radiologist for a foot x-ray on March 18, but he does not state the test results.  *Id.* at 12.

**D.  "Claim IV"**

Plaintiff's fourth claim is brought against defendants Hoskins, Henson, Smith, Covington, and Hyten for alleged Eighth Amendment violations related to restricting his recreation time.  ECF No. 2 at 9.  Plaintiff asserts that recreation time is a basic human need.  He

states that it is required that he receive three (3) hours per week of recreation time, but that he has "been striped of that need" by defendants depriving him of this right by stating that he was on "rec-restriction." *Id.*

In his affidavit, plaintiff complains about restrictions on his recreation time on multiple dates.  *See* ECF No. 2-1 at 5 (denied on "10-24-19"), 6 (denied on "12-20-19"), 11 (denied on "03-02-20," "03-06-20," "03-11-20," and "03-18-20"), 12 (denied on "03-23-20").  On some of these occasions, he states that he was never pulled out for recreation even after signing up for it, but other times, plaintiff was told that recreation time was not happening for anyone.  Also, plaintiff admits that he was told on both March 4 and March 18 that he was on "rec-restriction" due to receiving write-ups.  *Id.* at 11-12.

### E.  "Claim V"

Plaintiff's fifth claim is brought against defendant Major Hancock for alleged First Amendment violations caused by putting plaintiff on "book pass restriction."  ECF No. 2 at 9-10. As a result of this restriction, plaintiff "had to use the box for everything which was corporate punishment because [he] was punished for the doing of others."  *Id.*  Plaintiff also alleges that this is a First Amendment violation because he was restricted of his access to books and that he has a "right to read books."  Plaintiff alleges he received this restriction due to the actions of a different inmate while he was in solitary confinement.  *Id.* at 10.

### F.  "Claim VI"

Plaintiff also alleges that all twenty-one defendants violated state laws, in addition to 42 U.S.C. § 1983, with the above-described actions.  ECF No. 2 at 10.

### G.  Additional Allegations

Plaintiff makes many additional allegations in his complaint and affidavit that do not seem to fit into one of his six listed "Claims."  For example, plaintiff complains about SECC's methods of handling, processing, and responding to (or lack of response to) grievances, including their fifteen (15)-day time limit on filing a grievance from the date of incident.  ECF No. 2-1 at 4, 12.

Plaintiff also complains about cell searches that occurred on July 8, 2019, and February 24, 2020.  *Id.* at 4, 10.  In the July 2019 search, plaintiff complains about the confiscation of personal photos that a CO deemed to be contraband.  *Id.* at 4.  Plaintiff attached grievance forms in which he complained about the cell search, in addition to other complaints.  ECF No. 2-2 at 7-12.  The grievance was denied, reasoning that "cell searches are used as means to promote security and not as a punitive measure or any form of harassment towards you."  *Id.* at 7.

In regards to the February 2020 cell search, plaintiff complains that his due process was violated when he was denied access to witnesses, legal counsel, and video surveillance tape to contest a violation that he and his cellmate received for having food in their cell – food that plaintiff alleges was allowed as part of his cellmate's certified religious diet.  ECF No. 2-1 at 10. Plaintiff states that he tried to file a grievance about this cell search but that the caseworker did not pick it up from him in time to get it filed within the fifteen (15)-day deadline.  *Id.* at 12; *see also* ECF No. 8-2 at 33 (unfiled IRR concerning this incident).

The Conduct Violation Report dated February 24, 2020, included in plaintiff's supplemental filings, explains that plaintiff and his cellmate received a violation due to food-service items and a food-service spork being found in their cell on that date.  ECF No. 8-2 at 32. The spork is considered prison contraband.

Finally, plaintiff also complains about toilet problems in his cell.  He reported that the toilet in his cell was backed up on January 12, 2020, and as a result, he was "breathing feces." ECF No. 2-1 at 8.  Plaintiff states that he requested a plumber for "all three shifts," but it is unclear how long it took to fix the plumbing problem.  *Id.*  Again, on January 28, 2020, plaintiff had a problem with his cell toilet.  *Id.* at 9.  About thirty (30) minutes after his request for a plumber, a caseworker came to speak with him and asked him if moving him to a new cell would resolve the complaint.  Plaintiff stated that it would.  *Id.*  Presumably, plaintiff was moved.

**Discussion**

Accepting all well-plead facts as true and liberally construing the allegations of plaintiff's complaint and supplements, the Court finds that this case should be dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).  Plaintiff brings his claims against nineteen of the twenty-one defendants in their official capacities only.  These official capacity claims for compensatory damages are barred by the Eleventh Amendment. Regardless, even if all the plaintiff's claims were brought against defendants in their individual capacities, the factual allegations of the pleadings are insufficient to state a claim for relief.

**A.  Official Capacity Claims**

A plaintiff can bring a § 1983 claim against a public official acting in his or her official capacity, his or her individual capacity, or both.  *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007).  In this case, plaintiff does not specify in what capacity he sues nineteen of the defendants – which is all of defendants except Dysinger and Wilson.  When a plaintiff's complaint is silent about the capacity in which the defendant is being sued, the complaint is interpreted as including only official capacity claims.  *Id.*; s*ee also Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("[I]n order to sue a public official in his or her individual capacity, a

plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity").

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017) (internal citation omitted). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson*, 172 F.3d at 535. Here, defendants are all employees of the Missouri Department of Corrections ("MDOC"). Naming a state official in his or her official capacity is the equivalent of naming the government entity that employs the official – the State itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). However, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will,* 491 U.S. at 71.

In addition, in the absence of a waiver, the Eleventh Amendment[1] bars a § 1983 suit against a state official acting in his or her official capacity. *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 744 (8th Cir. 1998). Accordingly, to the extent plaintiff seeks monetary damages against the defendants, his official-capacity claims are barred by the Eleventh Amendment and should be dismissed. *Andrus ex rel. Andrus v. Ark.*, 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment.").

However, even if plaintiff had brought individual-capacity claims against all twenty-one defendants, the Court finds that his allegations fail to state a valid claim for relief.

---

[1] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend XI.

### B.  Failure to State an Eighth Amendment Claim

The Eighth Amendment's prohibition on cruel and unusual punishment, as applied to States through the fourteenth amendment, limits the conditions in which a State may confine convicted criminals.  *Robinson v. California*, 370 U.S. 660 (1962); *Rhodes v. Chapman*, 452 U.S. 337 (1981). The Supreme Court has explained this limit as a prohibition on punishments that "involve the unnecessary and wanton infliction of pain" including those that are "totally without penological justification."  *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173, 183 (1976)); *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986).

#### a.  Excessive Force

"[Correctional] Officers may reasonably use force in a good-faith effort to maintain or restore discipline but may not apply force maliciously and sadistically to cause harm."  *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2006) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)) (internal quotation marks omitted).  "Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically."  *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008) (citing *Hudson*, 503 U.S. at 9).  The test for reasonableness or the good-faith application of force depends on the following:

> whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury.

*Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002) (citing *Hudson*, 503 U.S. at 7).

Here, plaintiff alleges that excessive force was used on him on December 25, 2019, in his cell when he was taken down and body weight applied to his back while restraints were put on him.  Plaintiff filed a copy of the Conduct Violation Report concerning the incident, which

includes additional facts not contested or addressed by plaintiff.  *See* ECF No. 8-2 at 29.  The

Report does state that the incident "resulted in a use of force."  *Id.*  Accepting plaintiff's well-

plead facts as true, he admits to holding the food port open and demanding to speak to the second

lieutenant.  But plaintiff states that by the time the Five Man Moving Team arrived, he posed no

threat.  ECF No. 2-1 at 6.  According to the Report, plaintiff was told to submit to mechanical

wrist restraints, and he refused.  Plaintiff does not state why the Moving Team came into his cell,

whether they gave him a verbal directive as to restraints, or how he responded.  Plaintiff simply

asserts that he was not a threat and that he did not struggle, but that he was taken down and body

weight was used to hold him down for 12 to 15 seconds.  He states that he suffered injuries to his

hand, knee, and foot.  A nurse visually examined his injuries soon after the incident and told him

to submit a health service request.  *Id.* at 7.  A January 2020 x-ray of his hand showed no

fracture.  *Id.* at 10.  A doctor examined his knee injuries in February 2020, finding "nothing

major" and labelled it a "bruise."  *Id.* at 11.  Plaintiff did not state the results of his March foot x-

ray.  *Id.* at 12.

Applying the test for reasonableness or good-faith application of force described above,

the Court finds no valid Eighth Amendment excessive force claim here.  Plaintiff admits to

holding the food port open after refusing the noon meal.  The Conduct Violation Report states

plaintiff's window was covered with property and that he was told to submit to wrist restraints.

Plaintiff does not address this assertion or specify how he responded.  Either way, it seems that

plaintiff admits to violating a prison regulation.  *See Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir.

1993) ("There is no question that prison officials may compel compliance with legitimate prison

regulations.); *Stenzel v. Ellis*, 916 F.2d 423, 426 (8th Cir. 1990) (holding that inmates refusal to

comply with a legitimate jail security regulation constitutes a disturbance that poses a security risk to the safety of inmates and prison staff).

In addition, the take down of plaintiff and the use of body weight to hold plaintiff down for 12-25 seconds does not constitute an unnecessary amount of force in this situation.  It does not seem unreasonable that a correctional officer would apply body weight for 12-25 seconds while applying restraints.  Also, it seems that none of plaintiff's injures were significant given that a nurse who viewed plaintiff's injuries soon after the incident, saw no need for immediate treatment.  Follow-up x-rays and exams indicate only a possible muscle pull and bruising. Liberally construing plaintiff's allegations, the actions of defendants do not constitute malicious and sadistic punishment and therefore plaintiff fails to state an Eighth Amendment excessive force claim.  *See also Hudson*, 503 U.S. at 9 (stating that not "every malevolent touch by a prison guard gives rise to a federal cause of action"); *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000) (finding no excessive force when a limited application of pepper spray is used to control a recalcitrant inmate).

### b.  Deliberate Indifference - Failure to Protect

A prisoner may also assert an excessive-use-of-force claim against a correctional officer who knew or had reason to know another officer was using excessive force, and who had the opportunity to intervene to prevent the excessive use of force by his fellow correctional officer, but failed to do so.  *Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012); *Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981).  In this case, plaintiff's claim that defendant Wilson should have protected him on December 25, 2019, fails because the Court found above that there was no excessive force used on plaintiff during that incident.

### c.  Deliberate Indifference - Medical Care

A jail official's intentional denial of or delayed access to medical care for a prisoner's serious injury constitutes unnecessary and wanton infliction of pain, giving rise to a claim of deliberate indifference to that prisoner's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  To prevail on an Eighth Amendment claim of deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and deliberately disregarded that need.  *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019).  "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."  *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (internal quotations and citation omitted).

Here, plaintiff alleges he was denied medical care on three occasions.  First, plaintiff asserts that no one checked on him and there was no one watching him by camera after he declared himself suicidal on June 12, 2019.  ECF No. 2-1 at 2.  However, plaintiff does state that he subsequently saw a mental health professional and was removed from suicide watch.  Also, plaintiff does not allege that he suffered any harm; he does not state that he made any requests that were denied or deliberately disregarded.  Second, plaintiff asserts that he received no medical attention when he allegedly passed out in his cell on December 20, 2019, after starting a hunger strike that morning.  ECF No. 2-1 at 6.  However, in plaintiff's description of the event, he admits that a correctional officer checked on him immediately when other offenders alerted him and checked on him again 10-15 minutes later.  *Id.*  Also, again, plaintiff alleges no harm from this incident.  Third, plaintiff alleges he was denied medical care after the alleged incident of excessive force on December 25, 2019.  ECF No. 2-1 at 6-7.  As discussed above, plaintiff

admits that his injuries were visually examined by a nurse right after the incident.  Also, follow-up medical appointments and x-rays found only bruising.  *Id.* at 10-12.  As to all three of these occasions, plaintiff fails to state a claim of deliberate indifference to his medical care by defendants.

### d.   Deliberate Indifference – Prison Conditions

The United States Supreme Court has determined that prisoners have a protected liberty interest in avoiding conditions of confinement that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  To establish a conditions of confinement claim under the Eighth Amendment, a prisoner must demonstrate (1) that the alleged deprivation was "objectively, sufficiently serious" to result in the "denial of the minimal civilized measure of life's necessities," and (2) that the defendant whose act or omission caused the alleged constitutional deprivation behaved with "deliberate indifference to inmate health or safety."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations and citations omitted); *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004).  With respect to the "civilized measure of life's necessities," prison officials are required to ensure that inmates receive adequate clothing, food, shelter, and medical care.  *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998) (citing *Farmer*, 511 U.S. at 832).

Here, plaintiff seems to complain about three conditions of confinement: (1) unsanitary conditions in his cell due to a previous occupant's feces and a toilet backup; (2) unfair conditions of solitary confinement including lack of access to phone, recreation time, limited property, and book pass restriction; and (3) unhealthy conditions in his cell caused by maintenance workers.  The Court finds that none of these conditions resulted in a denial of the minimal civilized measure of life's necessities from a deliberate indifference to plaintiff's health and safety.

### i. Unsanitary Cell Conditions

Prison "inmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989).  To prevail on an unsanitary condition claim, the plaintiff must show that prison officials were deliberately indifferent to plaintiff's cell conditions. *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992).

Plaintiff complains multiple times about unsanitary cell conditions.  In June 2019, plaintiff alleges that he was put in a cell with the previous occupant's feces on the walls and floor.  However, plaintiff's main complaint with his cell placement (according to his grievance filing) was not the unsanitary conditions but the fact that the cell was a 1-bunk cell and he was not on suicide watch nor on single-man cell status.[2]  ECF No. 2 at 6.  Plaintiff was placed in the cell after declaring protective custody against his prior enemy cellmate.  ECF No. 2-1 at 2.  He became so "stressed" about the cell placement that he went on a "med-strike" and declared himself suicidal.  *Id.* at 2-4. He filed a grievance about the cell placement, but only mentioned that the cell was "full of feces" on the final line of the grievance.  ECF No. 2-2 at 8.  The grievance was denied, stating that plaintiff was only placed there "temporarily" because "no other cell was available at the time."  *Id.*  When plaintiff complained, a CO suggested he clean the cell but plaintiff only cleared a spot to put his mat on the floor.  This resulted in injury to his back.  ECF No. 2-1 at 3.  However, a subsequent spinal x-ray indicated only disc narrowing that normally occurs with age.  *Id.* at 10.  Plaintiff alleges no harm from the feces and states that it was eventually cleaned up by prison staff sometime during the four days that he was in the cell.

---

[2] To the extent that plaintiff is also complaining about the SECC's handling of his grievance on the issue, the Court notes that plaintiff has no constitutional right to his choice of cell.  *Lyon v. Farrier*, 727 F.2d 766, 768 (8th Cir. 1984) ("Among the liberties which prisoners do not enjoy is choice of cells.").

In this case, plaintiff was temporarily placed in a dirty cell for his own safety (after declaring his prior cellmate an enemy) because there was no other cell available.  He alleges back injury from sleeping on the floor, but the spinal x-ray indicated only normal changes with age.  *See also Goldman v. Forbus*, 17 F. Appx. 487, 488 (8th Cir. 2001) (finding no constitutional violation in plaintiff's four nights spent on a mattress on the floor since the stay was brief, he was allowed to leave the cell during the day, and he did not suffer any physical harm); *Blackwell v. Selig*, 26 F. Appx. 591, 593 (8th Cir. 2001) (stating that plaintiff "sleeping on the floor on a four-inch thick mattress for five nights did not amount to an unconstitutional condition of confinement").

Also, based on a CO's suggestion that plaintiff clean the cell, it seems that plaintiff was offered cleaning supplies.  Regardless, the prison staff did clean the cell sometime within the four days that plaintiff was in it.  These facts demonstrate no deliberate indifference.  *See Whitnack v. Douglas Cty.*, 16 F.3d 954, 957 (8th Cir. 1994) (finding no constitutional violation where inmate placed in unclean cell containing dried feces, vomit, hair, garbage, rotting food, and dried human mucus and not offered limited cleaning supplies until three to four hours later); *White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993) (finding no Eighth Amendment violation where prisoner confined to allegedly unsanitary cell for eleven (11) days).

Plaintiff also complains about unsanitary conditions due to a toilet backup in his cell on January 12 and 28, 2020.  ECF No. 2-1 at 8-9.  Based on plaintiff's allegations, prison officials were not deliberately indifferent to his complaints on either occasion.  Although on the first occasion plaintiff complained to three shifts of correctional officers (or for an entire day) and the toilet was eventually fixed.  And the second time, he was moved to a new cell within thirty (30) minutes.  Plaintiff's claims of deliberate indifference due to unsanitary cell conditions fail.  *See Smith v. Copeland*, 87 F.3d 265, 268-69 (8th Cir. 1996) (finding no Eighth Amendment or due

process violation where pretrial detainee was subjected to overflowed toilet in his cell for four days).

### ii. Conditions of Solitary Confinement

Plaintiff also complains about the harshness of the conditions in solitary confinement, including lack of access to the phone, limited property, denial of recreation time, and book-pass restriction.  The Eighth Circuit has stated that an assignment to disciplinary or administrative segregation is not, in and of itself, an atypical and significant hardship.  *See Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002) (stating that Eighth Circuit has "consistently held that administrative and disciplinary segregation are not atypical and significant hardships under *Sandin*").

Pursuant to the Eighth Amendment, prisoners are entitled to the basic necessities of human life and to humane treatment.  *Goff v. Menke*, 672 F.2d 702, 705 (8th Cir. 1982).  Those necessities include personal hygiene items.  *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (stating that prisoner's allegation that he had been denied personal hygiene items stated a claim under § 1983).  As such, the long-term, repeated deprivation of adequate hygiene supplies violates the Eighth Amendment rights of prison inmates.  *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996). However, there is no absolute Eight Amendment right not to be put in a cell without clothing or bedding.  *Williams v. Delo*, 49 F.3d 442, 445-46 (8th Cir. 1995).  The length of time an inmate spends in such a condition is a factor in determining whether there has been a constitutional violation.

Here, plaintiff complains that he couldn't use the phone to call his family and that he was placed on limited property while in solitary.  ECF No. 2 at 7-8.  Plaintiff was in solitary from December 5, 2019, to February 10, 2020.  During that time, he was on limited property and denied

hygiene products for two days.  ECF No. 2-1 at 7.  On his "third day of limited property," he received hygiene including a blanket, pants, soap, toothbrush, toothpaste, and shampoo.  But plaintiff complains that he had to wait until the end of the shift to get his shower shoes because they were lost, resulting in him missing his shower time.  *Id.*  Plaintiff also alleges that his access to books was restricted while he was in solitary.  ECF No. 2 at 9-10.  However, plaintiff admits that he still had access to some resources, he just "had to use the box."  *Id.*

"Prison officials can reasonably limit prisoners' activities when necessary to maintain security."  *Martin*, 780 F.2d at 1337-38 (finding no constitutional violation where prisoner's access to the general community was restricted through limitations on mail, visitation, and telephone privileges) (citing *Pell v. Procunier*, 417 U.S. 817, 822–23 (1974) (stating that "challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system" and finding no violation when prisoner denied face-to-face communication with people outside the prison)).

Plaintiff admits to being "argumentative" and receiving conduct violations which resulted in his placement in solitary confinement.  Plaintiff's allegation that he was denied access to the phone to call his family – seemingly on a single occasion – does not state a constitutional violation. *See id.*  In addition, two days of lack of access to hygiene items is not a "long-term, repeated deprivation of adequate hygiene supplies" and does not state a claim for a denial of basic necessities of human life in violation of the Eighth Amendment.  The only harm plaintiff alleges as a result of a denial of property – a delay in taking a shower – does not state a constitutional violation.  *See Scott v. Carpenter*, 24 Fed. Appx. 645, 647-48 (8th Cir. 2001) (finding no denial of "minimal civilized measure of life's necessities" when prisoner was able to shower only fifteen times in six months including a twenty-eight-day period without a shower).  Finally, limiting

- 23 -

plaintiff's access to books (but not denying him total access) while in solitary due to conduct violations, serves a legitimate policy goal related to security.

As to recreation time, the Eighth Amendment may be violated if a prisoner can show that prison officials were deliberately indifferent to his exercise needs.  *Wishon*, 978 F.2d at 448-49. In determination whether an inmate has been deprived of adequate exercise, "courts must consider several factors including: (1) the opportunity to be out of the cell; (2) the availability of recreation within the cell; (3) the size of the cell; and (4) the duration of confinement."  *Id*. at 449. Furthermore, a limitation of out-of-cell exercise does not necessarily violate the constitution.  *See Wishon*, 978 F.2d at 449 (determining that 45 minutes of out-of-cell recreation a week did not violate constitution).

In this case, plaintiff alleges he was denied recreation time on certain dates – sometimes because he was on recreation restriction, sometimes because recreation time was not being offered to any inmates at that time, and sometimes because he alleges his request for recreation time was ignored.  However, at no time does plaintiff allege that he was denied recreation time over an extended period or on sequential days.  *See* ECF No. 2-1 at 5-6, 11-12.  Plaintiff also admits receiving conduct violations which resulted in recreation restrictions.  In addition, plaintiff alleges no harm resulting from random and sporadic restrictions on his recreation time, and he does not allege that he was unable to exercise in his own cell.  *See also Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (stating that denial of exercise privileges for thirty-seven days was not an atypical and significant hardship in the context of normal prison life); *Freitas v. Ault*, 109 F.3d 1335, 1337 (8th Cir. 1997) (stating that prisoner's "on call" status, in which he was placed in lock-up, had fewer visitors, and was not allowed phone calls, did not violate his due process rights).

Plaintiff's allegations regarding denial of recreation time are not enough to state an Eighth Amendment violation.

### iii.   Unhealthy Conditions due to Maintenance Work

Finally, as to conditions of confinement, plaintiff complains that maintenance workers were sawing the food port on his cell door on February 9, 2020, which made it difficult to breathe and required plaintiff to stand on the toilet and breathe out the vent.  ECF No. 2-1 at 9.  Plaintiff states that he was not removed from his cell during this work, but he also does not allege that the work went on for long or that they did not stop when he complained about the difficulty breathing. A difficulty breathing that only lasted a few minutes and resulted in no alleged harm does not demonstrate a serious deprivation of plaintiff's health resulting from deliberate indifference.  *See Farmer v. Brennan*, 511 U.S. at 834.

### e.   Unreasonable Cell Searches

Plaintiff complains about cell searches that occurred on July 8, 2019, and February 24, 2020.  ECF No. 2-1 at 4. 10.  The Fourth Amendment's proscription against unreasonable searches does not apply within the confines of a prison cell, because prisoners do not have a legitimate expectation of privacy in their cells.  *Hudson v. Palmer*, 468 U.S. 517, 526 (1984).  Although the Eighth Amendment does protect prisoners from frequent retaliatory cell searches, plaintiff only alleges two searches over an eight-month period.  *See Scher v. Engelke*, 943 F.2d 921, 924 (8th Cir. 1991) (stating that "evidence of fear, mental anguish, and misery inflicted through frequent retaliatory cell searches, some of which resulted in the violent dishevelment of [the prisoner's] cell, could suffice as the requisite injury for an eighth amendment claim").  Here, plaintiff's allegations fail to state a claim for frequent, retaliatory cell searches under the Eighth Amendment.

## C.  Failure to State a Due Process Claim

Prisoners may claim the protections of the Due Process Clause, and may not be deprived of life, liberty, or property without due process of law.  *Haines v. Kerner,* 404 U.S. 519 (1972). However, a due process claim "is cognizable only if there is a recognized liberty or property interest at stake," and courts "need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest."  *Beaulieu v. Ludeman,* 690 F.3d 1017, 1047 (8th Cir. 2012) (internal citations omitted).

### a.  Access to Courts

Plaintiff alleges that he was denied access to the law library for over seven months despite having a pending legal court case concerning child custody.  According to the United States Supreme Court, it is well-established that prisoners have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 350 (1996).  Typically, access-to-courts claims result from deficiencies in a prison's legal assistance program or law library that hinder an inmate's ability to bring a claim. *Williams v. Hobbs*, 658 F.3d 842, 852 (8th Cir. 2011).  However, to state a claim for a violation of this right, inmates must assert that they suffered an actual injury to pending or contemplated legal claims. *Myers*, 101 F.3d at 544; *see also Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (stating that an inmate must demonstrate that he has suffered prejudice in order to assert a successful claim of denial of meaningful access to the courts).

In this case, plaintiff suffered no actual injury from his alleged lack of access.  Plaintiff complains about receiving legal mail late but admits that he was still able to respond within the Court's thirty (30) deadline.  ECF No. 2-1 at 1.  Plaintiff also complains that he was denied QLC status (which is required for law library access) despite providing legal mail demonstrating an ongoing court case.  However, according to the exhibits filed, plaintiff was successful in modifying

his child support payments from $50 to $1 a month.  ECF No. 8-1 at 19.  Plaintiff has not demonstrated any actual injury and therefore his due process access-to-courts claim fails.

###### b.  Grievance Filings

Plaintiff also alleges that he was denied due process on multiple occasions in relation to prison grievance filings.  On one occasion, plaintiff alleges he was not able to file a grievance until two months after an incident where he declared protective custody due to an enemy cellmate.  ECF No. 2 at 5.  However, in plaintiff's affidavit, he states that he was removed from his cell after declaring protective custody.  ECF No. 2-1 at 2.  And later, he did file grievances related to his removal and placement in a 1-bunk cell.  ECF No. 2-2 at 7-12.  Those grievances were denied but not for being untimely.  *Id.*  As such, it is unclear what due process right plaintiff alleges was violated.

On a second occasion, in February 2020, plaintiff complains that his due process was violated when he was denied access to witnesses, legal counsel, and video surveillance tape in order to contest a conduct violation he and his cellmate received regarding food in their cell.  ECF No. 2-1 at 10.  Plaintiff asserts his caseworker did not pick up his grievance filing on this issue on time to meet the 15-day filing deadline.  *See* ECF No. 8-2 at 33 (completed but never filed IRR).  For both these occasions, and all of plaintiff's complaints regarding SECC's handling of grievances, his allegations fail to state a due process violation.

It is well established that there is no federal constitutional liberty interest in having state officers follow state law or having prison officials follow prison regulations.  *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (*citing Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996)); *see also Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) (failure to follow prison policy is not basis for § 1983 liability).  Also, there is no federal constitutional right to a prison

grievance procedure, and neither state law nor state policy creates one.  Therefore, if a state elects to provide a grievance mechanism, violations thereof will not give rise to a § 1983 claim. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (a prison officials' failure to process or investigate grievances, without more, is not actionable under § 1983; grievance procedure is procedural right only and does not confer substantive right on inmate).  Because plaintiff has no substantive right to a grievance procedure, the Court need not reach what procedural due process is due.  All of plaintiff's allegations regarding SECC's methods of handling, processing, and responding to grievances, fail to state a claim under § 1983.

### D.  Failure of Additional Allegations

Plaintiff makes additional legal claims that are unsupported by any factual allegations.  For example, plaintiff claims that he was retaliated against for his belief that he suffered a due process violation regarding a declaration of protective custody.  ECF No. 2 at 5.  However, plaintiff does not state any retaliation against him.  Plaintiff also asserts that actions were taken against him due to discrimination, including discrimination based on his race (black), religion (Rastafarian), sex (male), income level (indigent), political beliefs (Democrat), and because he is "young with dreadlocks."  ECF No. 2 at 6.  However, again, plaintiff provides no facts to support allegations of disparate treatment or discrimination based on any of these factors.

For all the reasons discussed above, plaintiff's complaint and supplements fail to state a claim upon which relief may be granted under 42 U.S.C. § 1983.  In addition, because plaintiff's allegations fail to state a § 1983 claim, the Court will not assert jurisdiction over any alleged supplemental state-law claims.

Accordingly,

- 28 -

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed *in forma pauperis* [ECF No. 3] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $1.50 within **twenty-one (21) days** of the date of this Order.  Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the complaint as any defendants because the complaint fails to state a claim upon which relief can be granted.  Plaintiff's claims against defendants are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [ECF No. 4] is **DENIED as moot**.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 7th day of July, 2020.

\s\  Jean C. Hamilton
JEAN C. HAMILTON
UNITED STATES DISTRICT JUDGE